*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1725**

Melysa Kailyn Lau, petitioner,
Respondent,

vs.

Commissioner of Public Safety,
Appellant.

**Filed August 4, 2014
Reversed
Johnson, Judge**

Dakota County District Court
File No. 19AV-CV-13-1431

Wayne A. Jagow, Jagow, Meinerts, Grove & Valentine, Burnsville, Minnesota (for respondent)

Lori Swanson, Attorney General, Kristi Nielsen, Assistant Attorney General, St. Paul, Minnesota (for appellant)

Considered and decided by Chutich, Presiding Judge; Johnson, Judge; and Rodenberg, Judge.

**U N P U B L I S H E D   O P I N I O N**

**JOHNSON**, Judge

The commissioner of public safety revoked Melysa Kailyn Lau's driver's license after she was arrested for driving while impaired and refused to consent to chemical

testing. The district court rescinded the commissioner's revocation on the ground that the revocation violated the Fourth Amendment. We conclude that the district court erred in its legal analysis and, therefore, reverse.

**FACTS**

In the early-morning hours of April 17, 2013, Officer Justin Drogseth of the Apple Valley Police Department was dispatched to a fast-food restaurant in the city of Apple Valley, where a caller had reported that a vehicle swerved and nearly struck other vehicles. Officer Drogseth investigated and eventually arrested Lau for driving while impaired (DWI). At the police station, Officer Drogseth followed the procedures of the implied-consent statute. *See* Minn. Stat. § 169A.51 (2012). When asked to submit to chemical testing, Lau refused.

The commissioner of public safety revoked Lau's driver's license. In May 2013, Lau petitioned the district court for judicial review of the revocation. *See* Minn. Stat. § 169A.53, subd. 2 (2012). In July 2013, the district court conducted an implied-consent hearing. Lau was represented by counsel but was not personally present. At the beginning of the hearing, Lau's attorney referred to the United States Supreme Court's recent opinion in *Missouri v. McNeely*, 133 S. Ct. 1552 (2013), and indicated that Lau was challenging the revocation on the basis of that opinion. The parties stipulated to an exhibit consisting of the implied-consent peace-officer's certificate, the implied-consent advisory, and Officer Drogseth's police reports. Neither party called any witnesses. The district court promptly issued an order rescinding the commissioner's order of revocation on the ground that, in light of *McNeely*, the revocation of Lau's driver's license pursuant

2

to the implied-consent statute is a violation of her Fourth Amendment right to not be subjected to an unreasonable search. The commissioner appeals.

## D E C I S I O N

The commissioner argues that the district court erred by rescinding the revocation of Lau's driver's license. The commissioner contends that the district court erred by concluding that *McNeely* precludes the revocation of Lau's driver's license as a matter of law. Lau has not filed a responsive brief to address the commissioner's argument or the district court's decision. The case will be determined on the merits in the absence of a responsive brief. *See* Minn. R. Civ. App. P. 142.03.

The district court's decision implicates the constitutionality of a statute, which is a question of law that is subject to a *de novo* standard of review. *State v. Ness*, 834 N.W.2d 177, 181 (Minn. 2013). We presume that Minnesota statutes are constitutional and will declare a statute unconstitutional "with extreme caution and only when absolutely necessary." *Id.* at 182 (quotation omitted). The party challenging a statute on constitutional grounds must meet "the very heavy burden of demonstrating beyond a reasonable doubt that the statute is unconstitutional." *State v. Johnson*, 813 N.W.2d 1, 11 (Minn. 2012) (quotation omitted).

We begin by noting that the holding in *McNeely* is relatively narrow. The Supreme Court held that "the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant." *McNeely*, 133 S. Ct. at 1568. Accordingly, the Court concluded that the evidence in that case arising from a forcible, warrantless blood test (which was *not*

3

performed pursuant to Missouri's implied-consent statute) was properly suppressed by the Missouri trial court. *Id.* at 1557, 1568. The Court did not hold or suggest that the Missouri implied-consent statute was constitutionally infirm. *See id.* at 1568. In fact, the Court spoke approvingly of implied-consent statutes by noting that its opinion does not "undermine the governmental interest in preventing and prosecuting drunk-driving offenses" through the use of "legal tools" such as "implied consent laws that require motorists, as a condition of operating a motor vehicle within the State, to consent to BAC testing." *Id.* at 1566 (plurality opinion).

The Minnesota Supreme Court emphasized this portion of *McNeely* in *State v. Brooks*, 838 N.W.2d 563 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014), a criminal case concerning the validity of a person's consent to chemical testing pursuant to the implied-consent statute:

> Brooks's argument is inconsistent with the Supreme Court's discussion of implied consent laws in *McNeely*. As the Supreme Court recognized in *McNeely*, implied consent laws, which "require motorists, as a condition of operating a motor vehicle within the State, to consent to [blood alcohol concentration] testing if they are arrested or otherwise detained on suspicion of a drunk-driving offense," are " *legal tools*" states continue to have to enforce their drunk driving laws. The Court noted that these laws typically require suspected drunk drivers to take a test for the presence of alcohol and mandate that a driver's license will be revoked if they refuse a test. By using this "legal tool" and revoking a driver's license for refusing a test, a state is doing the exact thing Brooks claims it cannot do -- conditioning the privilege of driving on agreeing to a warrantless search.

*Id.* at 572 (alteration in original) (citations omitted) (quoting *McNeely*, 133 S. Ct. at 1566). Although the statements about implied-consent statutes in *McNeely* and *Brooks*

4

were not essential to the decision in either case, the statements tend to show that the revocation of a person's driver's license pursuant to Minnesota's implied-consent law does not violate the person's Fourth Amendment rights.

Furthermore, the district court's decision is inconsistent with a recent opinion of this court. In *Stevens v. Commissioner of Pub. Safety*, ___ N.W.2d ___, 2014 WL 3396522 (Minn. App. July 14, 2014), we concluded that the implied-consent statue "does not violate the unconstitutional-conditions doctrine by authorizing the commissioner of public safety to revoke the driver's license of a person who has been arrested for DWI and has refused to submit to chemical testing." *Id.* at *12. Neither Lau nor the district court expressly invoked the unconstitutional-conditions doctrine. Nonetheless, *Stevens* is relevant because we reasoned, in part, that if the implied-consent statute authorizes a search of a person's blood, breath, or urine, such a search would satisfy the reasonableness requirement of the Fourth Amendment. *Id.* at *6-10.

In sum, the district court erred by rescinding the revocation of Lau's driver's license on the ground that, under *McNeely*, the revocation violated Lau's Fourth Amendment right to be free from an unreasonable search. In light of that conclusion, we need not consider the commissioner's other arguments for reversal.

**Reversed.**